**ORIGINAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN

UNITED STATES OF AMERICA

Plaintiff,

v.

NAJIB SHEMAMI,
    aka Najib Elias Shamami,
    aka Najib Ilias Hanna Shamami,
    aka Najib Alyas Hanna Shamami,

    Defendant.
_____/

Case: 2:07-cr-20160
Assigned To: Edmunds, Nancy G
Referral Judge: Komives, Paul J
Filed: 03-28-2007 At 04:11 PM
INDI SEALED MATTER (EW)

VIOLATIONS: 18 U.S.C. §§ 371, 951(a), 1001(a)(2), 50 U.S.C. § 1701 et seq.

## INDICTMENT

THE GRAND JURY CHARGES

### COUNT ONE

(Conspiracy – 18 U.S.C. 371, 951(a))

D-1 NAJIB SHEMAMI

### I. INTRODUCTORY ALLEGATIONS

At all times material to this Indictment:

**A.   The Defendant**

    1.   Defendant NAJIB SHEMAMI, a naturalized United States citizen born in Iraq, was a resident of the Eastern District of Michigan.

    2.   Defendant NAJIB SHEMAMI was also known as Najib Elias Shamami, Najib Ilias Hanna Shamami, and Najib Alyas Hanna Shamami.

B.  **The Government of Iraq**

3. The Government of Iraq (hereafter GOI) was a foreign government. From 1979 to 2003, Iraq was ruled by Saddam Hussein and his regime.

4. Beginning in or about 1990 and continuing until in or about July 2004, the United States of America viewed the GOI as a threat to its national security and declared a national emergency with regard to the GOI. As a result, the United States severed diplomatic relations with the GOI and imposed severe restrictions with respect to conducting transactions with Iraq.

5. The Iraqi Intelligence Service (hereafter "IIS"), known in Arabic as the *Da'irat al-Mukhabbarat al-'Amma*, or the *Mukhabbarat*, was the foreign intelligence arm of the GOI. The missions of the IIS included foreign intelligence collection (the gathering of information regarding the intentions of foreign governments), counterintelligence (the detecting of efforts by foreign governments to gather intelligence about the GOI), and the collection of information regarding individuals and groups considered hostile to the GOI.

6. At no time material to this Indictment was defendant SHEMAMI:

(a) a duly accredited diplomatic or consular officer of a foreign government, recognized by the United States Department of State;

(b) an officially and publicly acknowledged and sponsored official or representative of a foreign government; or

(c) an officially and publicly acknowledged and sponsored member of the staff of, or employee of, any such officer, official, or representative of a foreign government.

2

## II. THE CONSPIRACY

7. Beginning on or about March 2002, and continuing until 2003 in the Eastern District of Michigan, Southern Division and elsewhere, defendant NAJIB SHEMAMI conspired and agreed with others known and unknown to the Grand Jury, to commit an offense against the United States, namely, to knowingly act in the United States as an agent of a foreign government, namely, the GOI, without prior notification to the Attorney General of the United States as required by law, in violation of Title 18, United States Code, Sections 371 and 951(a).

## A. MANNER AND MEANS OF THE CONSPIRACY

It was part of the conspiracy that:

8. Defendant SHEMAMI would travel to Iraq to meet with co-conspirators who were officers in the IIS.

9. Defendant SHEMAMI would communicate with co-conspirators who were officers in the IIS.

10. Defendant SHEMAMI would be given the "symbol" or codename "811" by the IIS.

11. Defendant SHEMAMI would receive direction from and act under the control of co-conspirators who were IIS officers.

12. Defendant SHEMAMI would collect information regarding individuals located in the United States who were of interest to the IIS.

13. Defendant SHEMAMI would report to the IIS the identities and activities of these individuals.

14. Defendant SHEMAMI would misrepresent, conceal, hide, and cause to be misrepresented, concealed, and hidden, the purposes of and acts done in furtherance of the conspiracy, to avoid detection and apprehension by law enforcement authorities.

## B. OVERT ACTS

15. In furtherance of the conspiracy, and for the purpose of effecting its unlawful objectives, defendant SHEMAMI and other unindicted co-conspirators committed overt acts, in the Eastern District of Michigan, Southern Division, and elsewhere, including, but not limited to, the following:

   a. On or about March 27, 2002, IIS officials approved contacting defendant SHEMAMI to cooperate with and serve the IIS.

   b. On or about September 19, 2002, defendant SHEMAMI traveled to Iraq.

   c. On or about September 19, 2002, defendant SHEMAMI reported to GOI officials that he had been interviewed by the FBI.

   d. On or about November 3, 2002, defendant SHEMAMI traveled to Jordan.

   e. On or about November 4, 2002, defendant SHEMAMI traveled to Iraq.

   f. On or about November 9, 2002, defendant SHEMAMI contacted IIS officials seeking assistance after his arrest in Iraq.

   g. On or about November 17, 2002, defendant SHEMAMI traveled to Turkey.

   h. On or about November 19, 2002, defendant SHEMAMI traveled to Iraq.

   i. On or about November 22, 2002, defendant SHEMAMI left Iraq.

   j. On or about November 23, 2002, defendant SHEMAMI traveled from Jordan to the United States.

k. On or about November 23, 2002, IIS officials prepared a memorandum seeking permission to cease searching defendant SHEMAMI when he entered Iraq because he had become an IIS source.

l. On or about December 16, 2002, defendant SHEMAMI traveled to Iraq.

m. On or about December 19, 2002, defendant SHEMAMI wrote a report to IIS officials naming Iraqi expatriates in the United States who defendant SHEMAMI said would be called upon to guide United States troops in the event of an invasion of Iraq, and naming potential candidates for political office in Iraq.

n. In or about December, 2002, IIS officials prepared a report that detailed the same information contained in the December 19, 2002, report written by defendant SHEMAMI.

o. On or about December 27, 2002, defendant SHEMAMI traveled to Turkey and obtained information about U.S. and Turkish military activities.

p. On or about December 29, 2002, defendant SHEMAMI traveled to Iraq.

q. On or about December 29, 2002, defendant SHEMAMI wrote a report to IIS officials regarding his observations and information he had obtained about United States and Turkish military activities in Turkey.

r. In or about January 2003, defendant SHEMAMI wrote a report to IIS officials that an individual had been interviewed by the Federal Bureau of Investigation in the United States.

s. In or about January 2003, IIS officials directed defendant SHEMAMI to provide the IIS with new information about the United States' aggressive intentions towards Iraq.

t. On or about January 3, 2003, defendant SHEMAMI left Iraq.

u. On or about January 4, 2003, defendant SHEMAMI traveled from Jordan to the United States.

5

v.     On or about January 15, 2003, IIS officials prepared a report based on the December 29, 2002, report written by defendant SHEMAMI. The IIS report verified the accuracy of some of the information received from defendant SHEMAMI regarding United States military forces in Turkey.

w.     In or about January 2003, IIS officials prepared a report based on the report written by defendant SHEMAMI regarding the individual who had been interviewed by and was cooperating with the Federal Bureau of Investigation in the United States.

All in violation of Title 18, United States Code, Sections 371 and 951(a).

## COUNT TWO

(Acting As Foreign Agent Without Notifying Attorney General - 18 U.S.C. 951(a))

D-1 NAJIB SHEMAMI

1. Paragraphs 1 through 6 of Count One of this Indictment are realleged and incorporated as if fully set forth herein.

2. Beginning in or about November 2002, and continuing until 2003, in the Eastern District of Michigan, Southern Division, defendant NAJIB SHEMAMI knowingly acted in the United States as an agent of a foreign government, specifically, the Government of Iraq, without prior notification to the Attorney General as required by law.

All in violation of Title 18, United States Code, Section 951(a).

## COUNT THREE

(International Emergency Economic Powers Act – 50 U.S.C. § 1701 et seq.)

D-1 NAJIB SHEMAMI

1. Paragraphs 1 through 6 of Count One of this Indictment are realleged and incorporated as if fully set forth herein.

2. Title 50, United States Code, Section 1701, *et seq.*, known as the International Emergency Economic Powers Act (hereinafter also referred to as IEEPA), grants the President the authority to, among other things, "investigate, . . . prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation, or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States . . . ." 50 U.S.C. § 1702(a)(1)(B). Section 1701 grants the President the power to exercise this authority upon declaration of a national emergency.

3. In Executive Order Number 12722, signed on August 2, 1990, President George H. W. Bush declared that "the policies and actions of the Government of Iraq constitute an unusual and extraordinary threat to the national security and foreign policy of the United States," and declared "a national emergency to deal with that threat." On August 9, 1990, following the August 6, 1990 passage of United Nations Security Council Resolution Number 661, which dealt, in part, with sanctions placed on Iraq, the President issued Executive Order Number 12724. Executive Order Number 12724 took "additional steps with respect to Iraq's invasion of Kuwait and the national emergency declared in Executive Order Number 12722."

8

4. After the President signed Executive Order Numbers 12722 and 12724 ("the Executive Orders"), Congress passed The Iraqi Sanctions Act, which declared that Congress "supports the actions that have been taken by the President ... [and] supports the imposition and enforcement of multilateral sanctions against Iraq," and required that the President "continue to impose the trade embargo and other economic sanctions with respect to Iraq and Kuwait ... pursuant to Executive Orders Numbered 12724 and 12725 (August 9, 1990) and, to the extent they are still in effect, Executive Orders Numbered 12722 and 12723 (August 2, 1990)."

5. The Executive Orders, which remained in effect in whole or in part through July 2004, prohibited certain trade-related activities between Iraq and United States persons. The Executive Orders defined the term "United States person" as any United States citizen, permanent resident alien, judicial person organized under the laws of the United States (including foreign branches), or any person in the United States, and vessels of U.S. registration."

6. The Executive Orders imposed economic sanctions on Iraq. The Executive Orders prohibited, among other things, the export of any goods, technology, or services from the United States to Iraq. In addition, the Executive Orders prohibited "[a]ny transaction by any United States person that evades or avoids, or has the purpose of evading or avoiding, any of the prohibitions set forth in this order. Any attempt to violate the prohibitions set forth in this part is hereby prohibited."

7. From 1990 through in or about July 2004, the Presidents of the United States continued, on an annual basis, the national emergency with respect to Iraq. These successive Executive Orders authorized the Secretary of the Treasury, in consultation with the Secretary of State, "to take such actions, including the promulgation of rules and regulations, as may be necessary to carry out the purposes" of the Executive Orders.

8. Pursuant to this authority, the Office of Foreign Asset Control (hereinafter also referred to as OFAC), the office within the Department of the Treasury charged with the responsibility of administering sanctions against foreign entities, promulgated regulations to implement the Executive Orders. Under the Iraqi Sanctions Regulations, Title 31 C.F.R.:

   a. Section 575.205 prohibited the export of goods, technology, or services from the United States to Iraq without a license from OFAC;

   b. Section 575.211 provided that any transaction that had the purpose of, or that had the effect of, evading or avoiding, or which facilitates the evading or avoiding of, any of the prohibitions set forth in the subpart [Iraqi Sanctions Regulations] was prohibited. This section further provided that any attempt or conspiracy to violate the prohibitions contained in the subpart was prohibited.

   c. Beginning in May 2003, the United States lifted certain economic sanctions imposed on Iraq and in July 2004, the President declared the national emergency with regard to Iraq to be over.

9. Between on or about December 19, 2002, and continuing through about January 2003, within the Eastern District of Michigan, Southern Division, and elsewhere, defendant NAJIB SHEMAMI, being a United States person, unlawfully, knowingly, and willfully, exported services to the Government of Iraq, to wit the collection and reporting of intelligence information, without having first obtained prior authorization from the Secretary of the Treasury.

All of which is in violation of Title 50, United States Code, Section 1705(b); Title 31, Code of Federal Regulations, Section 575.205; and Title 31, Code of Federal Regulations, Section 575.211.

## COUNT FOUR

(False Statements – 18 U.S.C. § 1001(a)(2))

D-1 NAJIB SHEMAMI

1. Paragraphs 1 through 6 of Count One of this Indictment are realleged and incorporated as if fully set forth herein.

2. On or about May 31, 2006, in the Eastern District of Michigan, Southern Division, in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"), an agency of the executive branch of the United States government, defendant NAJIB SHEMAMI knowingly and willfully made a materially false statement to an agent of the FBI, in that defendant SHEMAMI stated that he did not work for the Iraqi Intelligence Service between 2000 and 2003, when, in fact, defendant SHAMAMI then and there knew that he did work for the Iraqi Intelligence Service during this time period.

In violation of Title 18, United States Code, Section 1001(a)(2).

THIS IS A TRUE BILL

S/Grand Jury Foreperson

STEPHEN J. MURPHY
United States Attorney

/s Eric M. Straus
Eric M. Straus
Assistant Chief, Criminal Division

/s Barbara L. McQuade
Barbara L. McQuade
Assistant U.S. Attorney

/s Michael C. Martin
Michael C. Martin
Trial Attorney
U.S. Department of Justice

Dated: March 26, 2007

ORIGINAL

Barbara McQuade, AUSA, (313) 226-9725

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to

Case: 2:07-cr-20160
Assigned To: Edmunds, Nancy G
Referral Judge: Komives, Paul J
Filed: 03-28-2007 At 04:11 PM
INDI SEALED MATTER (EW)

**Companion Case Information**

This may be a companion case based upon LCrR 57.10 (b)(4)¹:

Judge Assigned:

☐ Yes   ☒ No

AUSA's Initials: _PM_

Case Title: USA v. NAJIB SHEMAMI

County where offense occurred: Macomb

Check One:   ■ Felony   ☐ Misdemeanor   ☐ Petty

__X__Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:
____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

**Superseding Case Information:**

Superseding to Case No: _____   Judge: _____

☐ Original case was terminated; no additional charges or defendants.
☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

March 28, 2007
Date

*Barbara L. McQuade* (signature)
BARBARA L. McQUADE (P45423)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: (313) 226-9725
Fax: (313) 226-4679
E-Mail address: barbara.mcquade@usdoj.gov

¹ Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

5/20/04